UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Andrea M. Johnson, William W. Hanby, and Robby D. Jacobson** | Civil No. 03-4553 (DSD/SRN) |
| **Plaintiffs,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Wayzata Nissan LLC, a Minnesota corporation, and Christopher Ochtera, its agent and employee** | |
| **Defendants** | |

Thomas J. Lyons, Jr., Esq., on behalf of Plaintiffs

Thomas E. Propson, Esq., on behalf of Defendants

___

SUSAN RICHARD NELSON, United States Magistrate Judge

The above entitled matter came before the undersigned United States Magistrate Judge on Defendant Wayzata Nissan's Motion to Dismiss for Failure to State a Claim and/or to Dismiss Punitive and Emotional Distress Damages Claims (Doc. Nos. 8, 13, 27, 31, 34).  This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons set forth below, the Court recommends that Defendants' motions be denied.

**I.   BACKGROUND**

Plaintiffs allege that their credit histories were wrongfully accessed by Defendant Wayzata Nissan through its employee, Defendant Christopher Ochtera, in order to obtain credit for other customers who could not obtain credit due to their own credit histories.  Plaintiffs contend that

Defendant Ochtera misappropriated their personal information in order to procure loans for customers with similar first names, who were otherwise unable to obtain loans. In some cases, the illicit loans allegedly then appeared on the plaintiffs' credit reports. In January 2002, Nissan Motor Acceptance Corporation called Defendant Wayzata Nissan because it had received several calls in a short time from Wayzata Nissan customers who wanted to change addresses or name-spellings on loans. Alerted to this irregularity, Defendant Wayzata Nissan investigated and discovered Mr. Ochtera's actions. Defendant Wayzata Nissan terminated his employment. Plaintiffs allege that Defendants' actions resulted in severe emotional distress.

## II.     PARTIES' POSITIONS

Under Fed. R. Civ. P. 12(b)(6), Defendants move to dismiss Plaintiff Hanby's claims for violations of the Fair Credit Reporting Act, ("FCRA"), 15 U.S.C. § 1681, and for invasion of privacy. As to Plaintiff Hanby, Defendants contend that he fails to state a claim for both counts and that the Nebraska statute of limitations applies, barring his privacy claim. Defendants also move to dismiss all of the Plaintiffs' emotional distress damages claims as well as the Plaintiffs' statutory punitive damages claims against Defendant Wayzata Nissan.

In response, Plaintiffs contend that much of Defendants' argument is irrelevant, as Defendants ask the Court to consider evidence outside the pleadings, which is not properly before the Court in a 12(b)(6) motion. Specifically, Plaintiff Hanby contends that Minnesota law applies to his claims, which are viable under Minnesota law. Furthermore, Plaintiffs argue that their punitive damages claims and emotional distress claims should not be dismissed at this stage of the litigation. As to the statutory punitive damages claims against Defendant Wayzata Nissan, Plaintiffs contend that Wayzata Nissan

may be held vicariously liable for the acts of its agent, Defendant Ochtera.

## III. DISCUSSION

When considering a motion to dismiss for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), "we must assume that all the facts alleged in the complaint are true" and generally construe the complaint in the light most favorable to the plaintiff. E.g., Coleman v. Watt, 40 F.3d 255, 258 (8th Cir. 1994). Although "the complaint must contain sufficient facts, as opposed to mere conclusions, to satisfy the legal requirements of the claim to avoid dismissal," DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1022 (8th Cir. 2002), a court "may dismiss 'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations.'" E.g., Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

### A. Plaintiff Hanby's Claims

Defendants argue that Plaintiff Hanby, a Nebraska resident, cannot state a claim under the FCRA because he traces liability to an August 18, 2001 inquiry and loan. Defendants present facts that the August 18, 2001 credit inquiry was for the purchase of a 2001 Nissan Pathfinder which Mr. Hanby purchased himself. Thus, Defendants argue, because Mr. Hanby authorized the credit application and credit disclosure, he cannot maintain his invasion of privacy and FCRA claims.

Plaintiff Hanby alleges that Defendant Ochtera obtained Plaintiff Hanby's credit report in October 2001 to obtain financing for a 1998 Cadillac that Mr. Hanby did not purchase. (Second Am. Complaint at ¶ 39.) Plaintiff Hanby alleges that the account which financed the 1998 Cadillac became delinquent, causing the financier to twice pull Plaintiff Hanby's credit report in January 2002. (Second Am Complaint at ¶ 41.) In early March 2003, Defendant Wayzata Nissan informed Plaintiff Hanby

via letter that one of its employees had used Plaintiff's personal credit information.  (Second Am Complaint at ¶ 43.)

Plaintiff Hanby contends that pursuant to 15 U.S.C. §§ 1681b(f) and 1681q, Defendants willfully and maliciously obtained his credit reports for impermissible and illegal purposes.  As a result, Plaintiff Hanby contends that he suffered emotional distress, humiliation and embarrassment, entitling him to relief under 15 U.S.C. §§ 1681n and 1681o.  Plaintiff Hanby, along with the other Plaintiffs, filed this suit on August 6, 2003.

### 1. Whether Plaintiff Hanby States a FCRA Claim

Defendants argue that Plaintiff Hanby fails to state a claim under the FCRA.  Defendants contend that Plaintiff Hanby's FCRA claim stems from inquiries and a loan dated August 18, 2001.  (Defs.' Mem. in Supp. Mot. to Dismiss at 10, citing Amended Complaint.)  Because the inquiries and loan were authorized by Plaintiff Hanby for a vehicle he actually purchased, Defendants contend that there can be no cause of action under the FCRA.  The FCRA violations that Plaintiff Hanby alleges are for obtaining information under false pretenses and for use of a consumer report for a purpose not authorized by statute.  See 15 U.S.C. §§ 1681q and 1681b(f).  While Defendants cite to the Amended Complaint, which refers to an August 2001 credit account that Plaintiff Hanby did not recognize, this reference is absent in Plaintiffs' Second Amended Complaint.  (See Second Am. Complaint at ¶¶ 39-56.)  Nowhere in the current pleadings, either in the actual FCRA counts, or in the recitation of facts applicable to Plaintiff Hanby, does he limit his claims to events occurring on August 18, 2001.  Under the 12(b)(6) standard which requires the Court to consider only whether Plaintiff states a claim for which relief can be granted, the Court is satisfied that in his Second Amended Complaint, Plaintiff

Hanby has sufficiently pled a claim under the FCRA. Thus, Defendants' motion to dismiss on this ground should be denied.

### 2.     Whether Minnesota or Nebraska Law Applies to Plaintiff Hanby's Privacy Claim

Defendants argue that Nebraska law applies to Plaintiff Hanby's privacy claim and requires its dismissal. Only in Defendants' reply memorandum do they engage in a choice-of-law analysis as to why Nebraska law, rather than Minnesota law, pertains to Mr. Hanby's privacy claim.

"Federal courts sitting in diversity are required to look to the choice-of-law principles of the forum state. . . and then apply the same law to the case as the forum state would." PVI, Inc. v. Ratiopharm GmbH, 253 F.3d 320, 329 (8th Cir. 2001). The same rule applies to federal courts exercising supplemental jurisdiction under 28 U.S.C. § 1367. See United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966); Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).      In this case, the Court exercises jurisdiction pursuant to 28 U.S.C. § 1367 (See Second Am. Complaint at ¶ 23), invasion of privacy is regulated by state law, and the forum is Minnesota. Before applying a choice-of-law analysis, a court should first decide if there is a conflict between the laws of the two forums. Jacobson, et. al. v. Universal Underwriters Ins. Group, 645 N.W.2d 741, 745 (Minn. App. 2002). "A conflict exists if the choice of one forum's law over the other will determine the outcome of the case." Nodak Mut. Ins. Co. v. American Family Mut. Ins. Co., 604 N.W.2d 91, 94 (Minn. 2000). Plaintiff Hanby alleges that Defendants illegally obtained his credit report in October 2001 (Second Am. Complaint at ¶ 39); his complaint was filed on August 6, 2003. Under Nebraska law, an action for invasion of privacy has a one-year statute of limitation, whereas under Minnesota law,

such an action has a two-year statute of limitation. See, Neb. Rev. Stat. § 20-211, Minn. Stat. § 541.07(1). Thus, if Nebraska law were applied to Plaintiff Hanby's privacy claim, filed on August 6, 2003, the Nebraska statute would bar it. Under Minnesota law, the applicable two-year statute of limitation would not bar Plaintiff Hanby's privacy claim. Thus, the requisite conflict of law exists.

Minnesota follows a significant contacts test for choice-of-law analysis. Nodak Mut. Ins. Co., 604 N.W.2d at 94 (citations omitted). Under the significant contacts test, courts consider the following five factors:

> (1) Predictability of results;
> (2) Maintenance of interstate and international order;
> (3) Simplification of the judicial task;
> (4) Advancement of the forum's governmental interest; and
> (5) Application of the better rule of law.

Id.

The first factor, predictability of results "represents the ideal that litigation on the same facts, regardless of where the litigation occurs, should be decided the same to avoid forum shopping." Id. (citations omitted). This factor also acts to preserve parties' justified contractual expectations, in which the parties desire advance notice of which state law governs disputes. Id. (citations omitted). The Court concludes that this factor favors neither Minnesota nor Nebraska law. This is not a contract case, nor does this involve a consensual transaction, therefore predictability favors neither forum. See Id. at 95, (concluding, "automobile accidents are not consensual transactions, nor is this a contract case, and therefore predictability favors neither forum.")

The second factor, maintenance of interstate and international order, is primarily concerned with whether the application of Minnesota law would manifest disrespect for Nebraska's sovereignty or vice

versa or impede the interstate movement of people and goods.  See Id.  Also, "courts examine the contacts between the forum state and the case to determine whether to apply the forum state's law." Jacobson, 645 N.W.2d at 746 (citations omitted).  The Court concludes that this factor favors applying Minnesota law.  The alleged conduct took place in Minnesota, Defendant Wayzata Nissan is located in Minnesota and is licensed to do business in Minnesota and Defendant Ochtera is a Minnesota resident. (Second Am. Complaint at ¶¶ 27,28.)   Since both Minnesota and Nebraska recognize invasion of privacy as a cause of action, whether by common law or statutory right, the application of Minnesota law does not manifest disrespect for Nebraska's sovereignty.

The third factor, simplification of the judicial task has not been given great weight in Minnesota courts.  Nodak Mut. Ins. Co., 604 N.W.2d at 95.   "[T]his factor is primarily concerned with the clarity of the conflicting laws."  Id.   Both Minnesota and Nebraska's laws are clear in terms of the statute of limitations for the type of claim at issue.[1]  While Minnesota courts have downplayed the significance of this factor, they have also noted that "the judicial task is obviously simplified when a Minnesota court applies Minnesota law."  Jacobson, 645 N.W.2d at 747 (citations omitted). Accordingly, this factor weighs slightly in favor of applying Minnesota law.

The fourth factor addresses which law most advances a significant interest of the forum.  Nodak Mut. Ins. Co., 604 N.W.2d at 95. "Minnesota courts have a recognized interest in seeing that all tort victims are fully compensated," and "this interest is not limited to residents."  Jacobson, 645 N.W.2d at

---

[1] While Nebraska's statute (Neb. Rev. Stat. § 20-211) codifies the tort of invasion of privacy, whereas Minnesota recognized the tort in Lake v. Wal-Mart Stores, this distinction does not affect the "clarity" of each state's statutes of limitation.

746 (citations omitted). Unlike Minnesota's statute of limitations applicable to the invasion of privacy tort, Nebraska's statute would lead to the dismissal of Plaintiff Hanby's claim. The Court is likewise persuaded by Plaintiff Hanby's argument, albeit under a different factor of the conflicts analysis, that because plaintiffs may not become immediately aware of the existence of claims for the invasion of privacy (e.g., as in identify theft cases), Minnesota's longer limitations period provides its tort victims with a better opportunity to seek compensation. Accordingly, this factor favors application of Minnesota law.

Finally, the fifth factor involves an analysis of the better rule of law. Not only would it be difficult to conclude whether a one or two year statute of limitations is inherently a "better rule of law," Minnesota courts "have not placed any emphasis on this factor in nearly 20 years." See Nodak Mut. Ins. Co., 604 N.W.2d at 96. Because the balance of factors favors its application, Minnesota law should apply to Plaintiff Hanby's invasion of privacy claim.

Next, Defendant argues that Plaintiff Hanby fails to state a cause of action for invasion of privacy under Nebraska law. (Defs.' Mem. in Supp. Mot. to Dismiss at 11.) As this Court has concluded that Nebraska law is inapplicable, Defendants' argument is moot. In determining whether Plaintiff Hanby's invasion of privacy claim is sufficiently pled, however, Minnesota law recognizes an invasion of privacy cause of action for the following three types of harm: (1) intrusion of seclusion; (2) appropriation of the name or likeness of another; and (3) publication of private facts. Bodah v. Lakeville Motor Express, Inc., 663 N.W.2d 550, 553 (Minn. 2003) ((citing Lake v. Wal-Mart Stores, Inc., et al., 582 N.W.2d 231, 236 (Minn. 1998)). Plaintiff Hanby has pled a claim for invasion of privacy based upon intrusion of right to seclusion and the disclosure of private and confidential facts to

third parties.  (Second Am. Complaint at ¶¶ 89-91.)  Based on Plaintiff Hanby's pleading of facts specific to his claims and his counts pleading invasion of privacy, the Court believes that he has sufficiently stated his invasion of privacy claim and recommends that Defendants' motion to dismiss be denied.

### B. Claim of Punitive Damages

Defendant Wayzata Nissan argues that Plaintiffs have failed to plead any facts which would support their request for statutory punitive damages under the FCRA against Wayzata Nissan.

Under the FCRA, punitive damages are available for willful violations.  15 U.S.C. § 1681n.  In order for an employee to hold an employer vicariously liable for punitive damages, the plaintiff-employee must establish that one of the exceptions found in section 217C of the Restatement (Second) of Agency has been satisfied.  See, e.g., Myers v. Bennet Law Offices, 238 F. Supp.2d 1196, 1206 (D. Nev. 2002).  Section 217C provides as follows:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,
> (a) the principal or a managerial agent authorized the doing and the manner of the act, or
> (b) the agent was unfit and the principal was reckless in employing or retaining him, or
> (c) the agent was employed in a managerial capacity and was acting in the scope of employment, or
> (d) the principal or a managerial agent of the principal ratified or approved the act.

Restatement (Second) of Agency § 217C; see also Restatement (Second) of Torts § 909 (same).

Plaintiffs contend that under either (b) or (c), they have pled facts sufficient to state a claim for statutory punitive damages under the FCRA against Defendant Wayzata Nissan.

Plaintiffs argue that under (b), Defendant Ochtera was unfit and Wayzata Nissan was reckless in employing him, as he was on parole and had only recently been released from federal prison for the felony offense of embezzlement from a former employer. (Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss at 17.) However, Plaintiffs did not include this allegation in their complaint. While they may seek leave to make such an amendment, Plaintiffs may not base their statutory vicarious punitive damages claim upon this prong of the Restatement.

As to (c), whether Defendant Ochtera was employed in a managerial capacity and was acting in the scope of employment, Defendants argue that Plaintiffs have failed to state a claim because they have not detailed the type of managerial responsibility Mr. Ochtera held.

Plaintiffs allege that Mr. Ochtera was "employed in a position of official capacity" with the "power and authority to bind Wayzata Nissan on contracts with assignees/lenders." (Second Am. Complaint, ¶ 30.) In his "role as manager," Mr. Ochtera was "allowed unfettered and unrestricted access to the credit reporting terminal used to access customers' confidential and personal information." (Second Am. Complaint, ¶ 31.) Plaintiffs allege that Defendant Wayzata Nissan "entrusted to Defendant Ochtera the means of use to implement and activate its subscriber status to access credit reporting information on Plaintiffs who are former good credit customers of Wayzata." (Second Am. Complaint, ¶ 32.) Furthermore, Plaintiffs allege that Defendant Wayzata Nissan, through its manager, Ochtera, accessed and pulled unauthorized credit reports on Plaintiffs. (Second Am. Complaint ¶ 33.) While Defendants correctly note that a complaint must contain facts sufficient to state a claim and not mere conclusory allegations ((Defs.' Mem. in Supp. Mot. to Dismiss at 9, citing Hanten v. School Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999)), the Court finds that Plaintiffs' complaint

contains sufficient factual, non-conclusory allegations.

In Fitzgerald v. Mountain States Telephone and Telegraph Co., 68 F.3d 1257, 1263 (10th Cir. 1995), cited by Defendants in their motion to dismiss, the court examined whether a jury verdict awarding plaintiff punitive damages for an employer's vicarious liability under Restatement § 217C was proper. The court noted that no pleading alleged that plaintiff functioned in a managerial capacity and, furthermore, her testimony at trial did not establish that she held the typical discretion of a manager. Id. In an Eighth Circuit sexual harassment case, the court held that § 217C applied so that the plaintiff could impute punitive damages to her employer. Ogden v. Wax Works, Inc., 214 F.3d 999, 1008 (8th Cir. 2000). There, the court noted that § 217C of the Restatement "contemplates liability for punitive awards where an employee serving in a 'managerial capacity' committed the wrong while 'acting in the scope of employment.'" Id. Defendants also cite Baufield v. Safelite Glass Corp., 829 F. Supp. 285, 286-87 (D. Minn. 1993), for the proposition that Plaintiffs must plead facts showing that a manager has the authority to "establish policy and make planning-level decisions," however, that case involved application of Minn. Stat. § 549.20, subd. 2(c) to plaintiff's common law defamation claims to her employer and is inapplicable here.

Here, assuming Plaintiffs' facts as true, it is not "clear that no relief can be granted under any set of facts that could be proved consistent with the allegations.'" E.g., Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995) (emphasis added). Plaintiffs have pled facts in the pleadings supporting the position that Mr. Ochtera was employed in a managerial capacity as a finance manager and was acting in the scope of employment. The Court therefore recommends the denial of Defendants' motion to dismiss Plaintiffs' FCRA punitive damages claims against Wayzata Nissan.

### 3. Emotional Distress Damages

Finally, Defendants argue that Plaintiffs have failed to provide sufficient evidence in support of their emotional distress claims, citing, for example, Myers v. Bennett Law Offices, 238 F. Supp.2d 1196, 1206 (D. Nev. 2002) and Cousin v. Trans Union Corp., 246 F.3d 359 (5th Cir. 2001). (Defs.' Mem. in Supp. Mot. to Dismiss at 18.)  In both of those cases, however, the courts were not reviewing the evidence at the pleadings stage, but rather, were considering whether plaintiffs' evidence sufficiently supported their emotional distress damages at the summary judgment stage in Myers and post-trial in Cousin.  Myers, 238 F. Supp.2d at 1206; Cousin, 246 F.3d at 371.   Plaintiffs allege that they have experienced emotional distress, humiliation, embarrassment and frustration.  (See, e.g., Second Am. Complaint, ¶ 56.)  At this stage, upon Defendants' 12(b)(6) motion to dismiss, the Court finds that Plaintiffs have sufficiently pled their emotional distress damages.  Whether their claims are sufficiently supported by admissible evidence is an issue for another day.  At this time, however, it cannot be said that plaintiffs would be denied relief under any set of facts that could be proved consistent with their allegations.   The Court therefore recommends the denial of Defendants' motion to dismiss Plaintiffs' emotional distress damages claims.

**THEREFORE, IT IS HEREBY RECOMMENDED that:**

1. Defendant Wayzata Nissan's Motion to Dismiss for Failure to State a Claim and/or to Dismiss Punitive and Emotional Distress Damages Claims (Doc. Nos. 8, 13, 27, 31, 34) **be DENIED.**

Dated: March 3, 2004

                                        <u>s/Susan Richard Nelson</u>
                                        SUSAN RICHARD NELSON
                                        United States Magistrate Judge

Under D. Minn. LR 72.1(c)(2), any party may object to this Report and Recommendation within 10 days after being served with a copy thereof. The party shall file with the Clerk of Court, and serve on all parties, a writing which specifically identifies those portions of this Report and Recommendation to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals